Argued and submitted August 30, affirmed December 14, 1983

# STATE OF OREGON,
*Appellant,*

*v.*

# RANDALL LINDON BURNAM,
*Respondent.*

## (10-81-08524; CA A23728)

672 P2d 1366

Joseph M. Kosydar, Assistant District Attorney, Eugene, argued the cause for appellant. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The state appeals from an order quashing two search warrants and granting defendant's motion to suppress evidence seized during their execution. We affirm.

Ms. Yandell, clerk for Justice of the Peace Baumeister, was reported missing by a co-worker on September 7, 1981. On the basis of previous contacts with her concerning alleged crimes perpetrated against her by defendant and on information gathered that day, two police officers went to defendant's residence. As they approached the house, they saw in plain view on the front seat of defendant's car a knife matching the description of one used in an alleged earlier attack on Yandell.

The officers went to the front door, and defendant opened it. Yandell appeared behind defendant; she was nude and appeared to be upset. One of the officers went into the house and handed her a coat, whereupon she stated that she had been raped. One officer took defendant to the patrol car, where he was searched, handcuffed, placed in the car and formally arrested. The officer returned to the house, where Yandell and another officer were in defendant's bedroom and Yandell was dressing. Clearly visible to the officers in the bedroom were items allegedly involved in the incident, including a knife and tape. The items were not seized at that time, because it was decided that a search warrant should be obtained first.

The officers locked the house. One of them took defendant to the police station, and the other took Yandell to the hospital, where evidence of the alleged crime was seized and she was interviewed. At 2 a.m. the next morning, two search warrants were obtained from Justice of the Peace Baumeister. One warrant authorized a search of defendant's residence and vehicle; the other authorized a search of defendant's person. At 2:30 a.m., the warrants were executed and evidence was seized.

The trial court quashed both warrants and suppressed the evidence seized by their authority, because they were not issued by a neutral and detached magistrate and because the searches and seizures did not fall within any of the exceptions to the warrant requirement.

The state contends that, although the warrants were not issued by a neutral and detached magistrate,[1] the evidence should not have been suppressed, because the officers could have seized the evidence in plain view in defendant's car and house at the time they first observed it, and because the evidence was admissible under the "inevitable discovery or good faith exceptions to the warrant requirement."

For the most part, this case is controlled by *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), where the police obtained a warrant from a non-neutral magistrate after lawfully observing, but not seizing, evidence of crime. The court held that the warrant was invalid and that the evidence must be suppressed. Even assuming here that the officers were lawfully in defendant's house, contrary to the trial court's findings, and that they could have seized it at that time, or that valid warrants could have been obtained from any neutral magistrate based on the affidavits presented, *Coolidge* holds that the evidence must be suppressed. There, the Court said:

> "* * * As for the proposition that the existence of probable cause renders noncompliance with the warrant procedure an irrelevance, it is enough to cite *Agnello v. United States,* 269 US 20, 33, 70 L Ed 145, 149, 46 S Ct 4, 51 ALR 409, decided in 1925:
>
>> " 'Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.'
>
> "See also *Jones v. United States,* 357 US 493, 497-498, 2 L Ed 2d 1514, 1518, 78 S Ct 1253; *Silverthorne Lumber Co. v. United States,* 251 US 385, 392, 64 L Ed 319, 322, 40 S Ct 182, 24 ALR 1426. ('[T]he rights . . . against unlawful search and seizure are to be protected even if the same result might have been achieved in a lawful way.')" 403 US at 450.
>
> "* * * * *
>
> "* * * [P]lain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of

---

[1] The state does not appeal the finding of fact that Justice of the Peace Baumeister did not act as a neutral and detached magistrate at the time he signed the search warrants in question. It is clear that he did not.

the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. *Taylor v. United States,* 286 US 1, 76 L Ed 951, 52 S Ct 466 [1931]; *Johnson v. United States,* 333 US 10, 92 L Ed 436, 68 S Ct 367 [1948]; *McDonald v. United States,* 335 US 451, 93 L Ed 153, 69 S Ct 191 [1948]; *Jones v. United States,* 357 US 493, 497-498, 2 L Ed 2d 1514, 1518, 78 S Ct 1253 [1958]; *Chapman v. United States,* 365 US 610, 5 L Ed 2d 828, 81 S Ct 776 [1961]; *Trupiano v. United States,* 334 US 699, 91 L Ed 1663, 68 S Ct 1229 [1948]." 403 US at 468.

Although the state urges us to "reconsider" *Coolidge,* we lack that authority. The substance of the state's "good faith exception" argument is that, even though the warrants were invalid, suppression is not the proper remedy. It is true, as the state points out, that suppression, generally, is a prophylactic designed to deter police misconduct and that no deterrence results from suppressing evidence when the police did not engage in misconduct. However, there is no recognized "good faith"[2] exception to the requirement that a warrant be issued by a neutral and detached magistrate. *See State v. Carsey,* 295 Or 32, 664 P2d 1085 (1983). Under the Fourth Amendment, the magistrate signing the warrant must be neutral and detached; if not the warrant is invalid. *Coolidge v. New Hampshire, supra.* Even if we assume that there may be a good faith exception, it would not be applicable here. It may be that the officers honestly believed that the warrants were valid, but at least one of them knew that the magistrate was neither neutral nor impartial. The record indicates that the officer who obtained the warrants and took them to the magistrate for his signature knew that the alleged victim was the magistrate's clerk and that he was very concerned about the

---

[2]

"Stated in its broadest sense [such an] exception would validate an illegal search if the police had reasonable 'good faith.' * * * The fourth amendment unquestionably affects police conduct; but it was not enacted for the primary purpose of encouraging police to act in good faith. It was enacted to protect people in their homes against unreasonable warrantless searches." *State v. Carsey, supra,* 295 Or at 44-45.

apprehension of defendant.[3] Prior to defendant's arrest, the magistrate had called the police concerning Yandell's problems with defendant and had requested that the police take whatever steps they could to protect Yandell. While he was preparing the affidavits, the officer preparing them talked to Baumeister on the telephone. If good faith is to be an exception to the exclusionary rule, this case is not the vehicle to adopt it.

■     The closest the state comes to asserting a cognizable error is the suppression of the knife observed on the seat of defendant's car. We assume that it could have been seized when it was first observed, because of the exigent circumstance that the car could have been driven away. *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979). However, after defendant was arrested, he could not drive the car. Unlike the officers in *Greene,* the officers here knew that defendant lived alone in the house, and there is no evidence that the car was unlocked or that anyone other than defendant had access to it. They had no reason to believe that the evidence would be destroyed pending the issuance of a warrant. That there was ample time to obtain a warrant is demonstrated here, as in *Coolidge,* by the fact that the officers did get one and made a search pursuant to its authority.

The record supports the trial court's finding and conclusion that the state failed to demonstrate that the search and seizure falls within an exception to the constitutional mandate requiring a search warrant.

Affirmed.

---

[3] Because the state did not make the good faith argument below, the trial court made no findings on the point.