Submitted December 28, 2012, affirmed June 11, petition for review denied October 23, 2014 (356 Or 400)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JAMIE RAY PIERCE,
*Defendant-Appellant.*

Washington County Circuit Court
C100480CR, C100906CR;
A146946 (Control), A146947

333 P3d 1069

Peter Gartlan, Chief Defender, and Mary M. Reese, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General, filed the brief for respondent.

Before Nakamoto, Presiding Judge, and DeVore, Judge, and Schuman, Senior Judge.

DEVORE, J.

**DEVORE, J.**

Defendant appeals judgments of conviction for first-degree burglary, ORS 164.225, and first-degree theft, ORS 164.057, assigning as error the denial of his motion to suppress evidence of stolen goods. He argues that the judge who issued the search warrants was not "neutral and detached," as required by the Oregon and federal constitutions, because the judge had been an attorney who had represented defendant in a similar criminal matter. The state contends that the issue is moot, and that, in any event, the warrants are valid. We affirm.

We review the trial court's ruling on defendant's motion to suppress for errors of law, and we are bound by the trial court's factual findings that are supported by sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In two earlier cases, defendant had been arraigned on burglary charges. At the time, Eric Butterfield was engaged as a deputy public defender and served as defendant's counsel in those cases between the time of defendant's arraignment in November 2004 and a pretrial conference on January 6, 2005. Butterfield met with defendant three times—in the jail, at a pretrial conference, and at a sentencing hearing. Defendant says that he told his attorney about his drug habit and "how [he] did the burglaries." Defendant remembers that he also mentioned uncharged burglaries. Although Butterfield advised defendant to hold off resolving the cases, defendant did not take the advice. Defendant pleaded guilty. Defendant had no further contact with Butterfield, excepting one brief encounter.[1]

On his first day in office, March 2010, a newly sworn Judge Butterfield was approached by Detective Scott Cater with an affidavit seeking a search warrant for defendant's apartment and storage areas.[2] The affidavit recounted the circumstances of a residential burglary in September 2009, not far from and not unlike one of defendant's 2004 burglaries. A window had been pried open, everything had been

---

[1] In August 2009, defendant spoke with Butterfield for about five minutes to request a copy of his criminal record for employment purposes.

[2] The deputy did not know that Judge Butterfield, when a defense attorney, had once represented defendant.

ransacked, and about $19,000 in belongings had been taken. The belongings had included a couple's wedding gifts, gift cards, a new shower head, a clean-dishes indicator magnet for a dishwasher, and some things with little second-hand value. The detective had found that someone had used the stolen gift cards to purchase window blinds, among other things. The affidavit reported that a witness told the deputy that defendant's apartment had a new shower head, a clean-dishes dishwasher magnet, and new window blinds.

Judge Butterfield recognized defendant's name, but, after five years, did not recall any specifics about defendant, any prior conversations, or the facts of the prior cases. The judge reviewed the Oregon Code of Judicial Conduct and consulted someone he regarded as an expert on judicial ethics. He later attested, "Since I had no biases or prejudices towards any party to the search warrant and I did not have any knowledge about the facts described in the affidavit, I concluded * * * that it was appropriate for me to review the warrant." He concluded that the affidavit gave probable cause to search, and he approved the warrant. When police conducted the search, they found belongings taken from the victims' home. Defendant was present. The officers noticed other things that they believed had been stolen elsewhere. Those things matched serial numbers and descriptions of goods from other burglaries, prompting police to seek additional search warrants. Judge Butterfield authorized those warrants as well.

Defendant was indicted on multiple counts of first-degree burglary and first-degree theft. The charges were filed in two cases and consolidated for trial. Defendant moved to suppress evidence from the searches. After denial of the motion, the state dismissed several counts; defendant waived a jury; and the parties tried the remaining counts based upon stipulated facts. The court found defendant guilty of five counts of first-degree burglary and one count of first-degree theft. Defendant now appeals the court's denial of his motion to supress.

The state contends that we should not consider the merits of defendant's appeal, because the state believes that the stipulated facts render the appeal "moot." It is true that

this proceeding does not involve a conditional guilty plea, which, by definition, would reserve the right to appeal. *See* ORS 135.335(3).[3] And, it is true that defendant admitted the existence of evidence sufficient to prove the allegations of the indictment. But neither did this proceeding involve a guilty plea, from which an appeal is permitted only in narrow circumstances, not present here. *See* ORS 138.050(1).[4] A different approach was taken, and there is no dispute about what was intended. At the conclusion of suppression hearing, the parties had agreed to proceed with a trial of stipulated facts on reduced charges subject to an appeal of the suppression issues. The record reflects that the court told defendant, "In all likelihood, you're going to be convicted of those charges and that preserves your appeal rights." On the following day, defendant conceded the stipulated facts with that understanding. The stipulations sufficed to prove the offenses, but, in the court's words, the stipulations were made while preserving the appeal. The court found defendant guilty.

Although the state concedes that the defendant and judge intended to preserve the challenge to the search warrants, the state sees defendant's stipulations as an unqualified concession of the incriminating evidence. As authority, the state relies on *State v. Massengill*, 100 Or App 369, 373-74, 786 P2d 731 (1990), a decision involving stipulated facts. That decision, however, did not make a stipulated facts trial the functional equivalent of a guilty plea from

---

[3] The statute provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

ORS 135.335(3).

[4] In relevant part, the statute involving limited appeals from guilty pleas provides:

"[A] defendant who has pleaded guilty or no contest may take an appeal from a judgment or order described in ORS 138.053 only when the defendant makes a colorable showing that the disposition:

(a) Exceeds the maximum allowable by law; or

(b) Is unconstitutionally cruel and unusual."

ORS 138.050(1).

which no appeal is permitted on a search issue. *Cf. State v. Ronninger*, 7 Or App 447, 455, 492 P2d 298 (1971) (guilty plea forecloses search issue). In *Massengill*, police had found a methamphetamine lab in a vacant apartment in a building that the defendant managed. The defendant stipulated to the presence of the lab in the vacant apartment and to her admission that she was responsible for it. The defendant disputed the validity of the officers' search and seizure of only her *own* apartment. The trial court refused suppression of that evidence. On appeal, we affirmed her conviction because nothing challenged the stipulated evidence about the vacant apartment or her admission of responsibility. We held that the validity of the search of the defendant's apartment was irrelevant, and we characterized the defendant's assignment of error as moot. *Id.* at 374. Because the defendant's conviction rested upon stipulated facts from a search that was unchallenged, the *Massengill* decision is distinguishable. This case rests upon stipulated facts from a search that *was* challenged. Those stipulations do not now foreclose appellate review.

Turning to the merits, we recognize that defendant's argument is comprised of a series of propositions. The background for defendant's first proposition is the mandate of the Oregon and federal constitutions that no search warrant shall issue except upon probable cause. Or Const, Art I, § 9; US Const, Amend IV.[5] Defendant asserts the principle, drawn from federal and state decisions, that the determination of probable cause must be made by a "neutral and detached magistrate." *See Coolidge v. New Hampshire*, 403 US 443, 449, 91 S Ct 2022, 29 L Ed 2d 564 (1971) (using

---

[5] Article I, section 9, of the Oregon Constitution provides that:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment to the United States Constitution provides that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

terms in relation to Fourth Amendment); *State v. Castilleja,* 345 Or 255, 269, 192 P3d 1283, *adh'd to on recons,* 345 Or 473 (2008) (using terms in relation to the Oregon Constitution). Next, defendant recalls a standard of judicial ethics that requires that a "judge shall disqualify himself or herself in a proceeding in which the judge's impartiality reasonably may be questioned * * *." Code of Judicial Conduct, JR 2-106(A) (2010).[6] Defendant asserts that rule should be extended and understood to mean that a judge should avoid even the appearance of impropriety. Linking these propositions, defendant contends that the appearance of impropriety should mean that a judge is no longer "neutral and detached." Then, assuming that the facts in this case required recusal under ethical standards, defendant concludes that Judge Butterfield could not be "impartial and detached" so as to authorize the warrants.

We begin, necessarily, with a consideration of Oregon law before turning to the federal constitution. *See State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983) (discussing analytical sequence). Defendant prefers state law. Defendant concedes, "In general, courts have held that the federal constitution does not require a magistrate to avoid the appearance of impropriety." *See, e.g., U.S. v. Harris,* 566 F3d 422, 434 (5th Cir 2009), *cert den,* 559 US 975 (2010) (magistrate represented defendant in unrelated matter six years before); *United States v. Heffington,* 952 F2d 275, 278-80 (9th Cir 1991) (magistrate's representation of a co-defendant in a prior drug case involving defendant). Consequently, defendant urges that Article I, section 9, of the Oregon Constitution should go further than its federal counterpart. Specifically, defendant asks that Oregon incorporate its standards for recusal, found in statute and the judicial code, into the state's constitution so as to give extended meaning to an "impartial and

---

[6] The rule has since been renumbered and amended. At the time of these proceedings, the Oregon Code of Judicial Conduct, JR 2-106(A) provided, in relevant part:

"(A) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality reasonably may be questioned, including but not limited to instances when

"(1) the judge has a bias or prejudice concerning a party or has personal knowledge of disputed evidentiary facts concerning the proceeding;

"(2) the judge served as a lawyer in the matter in controversy * * *[.]"

detached" judge. Defendant's theory, however, faces troubles in text and in concept.

Whether we consider the statute or rule, the text of the recusal standards do not say as much as defendant hopes. Defendant cites ORS 14.210(1)(d), which provides, "A judge shall not act as judge if the judge has been attorney *in the action, suit or proceeding* for any party." (Emphasis added.) In this case, Judge Butterfield was never an "attorney in the [same] * * * proceeding" that involves these search warrants. His involvement, as an attorney, was with different cases five years before. As a result, the recusal statute is not a relevant standard in this case. Similarly, the text of the judicial code does not address this situation. At the time, the ethics code provided:

> "(A)  A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality reasonably may be questioned, including but not limited to instances when
>
> "(1)  the judge has a bias or prejudice concerning a party or has personal knowledge *of disputed evidentiary facts* concerning the proceeding;
>
> "(2)  the judge served as a lawyer *in the matter in controversy*, or a lawyer with whom the judge previously was associated served during the association as a lawyer in the matter, or the judge or the lawyer has been a material witness in the matter * * *[.]"

Oregon Code of Judicial Conduct, JR 2-106(A) (2010) (emphasis added). The specific directives in subparagraphs (1) and (2) do not address the situation in this case, because Judge Butterfield had no personal knowledge "of disputed evidentiary facts" about the charges in the recent burglaries, and he had not served as a lawyer "in the matter in controversy" which would become the current cases.

If anything, only the rule's general terms could support defendant's argument. Those terms direct that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality reasonably may be questioned * * *." *Id.* Defendant paraphrases the rule, in broader terms, to mean that a judge should avoid any appearance of impropriety. Defendant asks that Oregon follow Kentucky

in grafting this broader admonition onto the constitutional requirement for a neutral magistrate. In *Commonwealth v. Brandenburg*, 114 SW3d 830, 832 (Ky 2003), the Kentucky court did so, but it did so based on a Kentucky rule that expressly declared, "'A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities'" (quoting Kentucky Code of Judicial Conduct, Canon 2). That text, however, is not the text of our own JR 2-106(A). Oregon's rule does not employ the vague term "appearance" or a broad term like "impropriety." Instead, Oregon's rule focuses on "impartiality" and requires recusal when impartiality "reasonably may be questioned." Our rule is not a nebulous admonition about appearances. Ours is an objective rule about impartiality.

Here again, when the rule's text is the measure, the facts fail defendant. Judge Butterfield attested that, at the time he reviewed the search warrant affidavit, he did not recall any specifics about defendant, his conversations, or the facts of the prior cases. He recognized only the defendant's name. He declared that he

> "was absolutely free of bias or prejudice towards or against any party. The prior attorney-client relationship had absolutely no bearing on my decision regarding the search warrants. I approved the search warrants only because I believed the affiant established probable cause to search for evidence of crimes."

After a hearing on defendant's motion to suppress, the trial court found that "Judge Butterfield's prior representation of the defendant under the facts of this case [did] not disqualify him from signing the warrant" because "there is nothing on the record that [indicated] he used any privileged information * * * that he held that was not contained within the warrant itself to form the basis for the warrant." *Cf. Kilgore v. Maass*, 89 Or App 489, 492, 749 P2d 1201 (1988) (under earlier code, a judge is not disqualified for the sole reason that he had previously represented the defendant in an unrelated matter). On appeal, defendant concedes the findings, acknowledging that:

> "This is not a case where Judge Butterfield was an active participant in the criminal investigation for which

the warrant was obtained or where he had a pecuniary or other personal interest in the issuance of a warrant. This is also not a case where Judge Butterfield's prior representation of defendant created an *actual* conflict of interest. Defendant acknowledges that there is evidence to support the trial court's factual finding that, although Judge Butterfield recognized defendant's name as a former client, he did not remember anything specific about defendant's case and that he approved the warrant based only on the facts set forth in the affidavit and not on any information within the attorney-client privilege."

(Emphasis in original.) As noted before, we are bound by the trial court's findings. Those findings mean that there was no evidence that Judge Butterfield used former client confidences to fill in the blanks in the probable cause inquiry. Instead, the judge found probable cause from the affidavit itself. Given all of the evidence, this is not a situation in which "the judge's impartiality reasonably may be questioned." Therefore, like ORS 14.210(1)(d), the text of Code of Judicial Conduct JR 2-106(A) does not address these circumstances. Because the recusal standards would not reach these circumstances, no purpose would be served to conjoin ethical and constitutional standards. The recusal standards, at the least, are irrelevant on these facts.

Of more concern than defendant's textual arguments are the problems in concept. The purposes of a judicial code of ethics are broader, serving aspirational and precautionary purposes. The standards for disqualification help assure public confidence in the judiciary. *See People v. Gallegos*, 251 P3d 1056, 1063 (Colo 2011) (refusing to incorporate disqualification standard into the meaning of "neutral and detached"). The standards for a valid search protect individuals from unreasonable search or seizure, while governing criminal law enforcement. *See People v. Jones*, 215 Ill 2d 261, 269, 830 NE 2d 541, 548-49 (Ill 2005) (comparing government interests with personal liberty interests). Ethical and constitutional standards may compliment one another, but they are not the same. They are distinguishable, even if at times they are overlapping. *See In re Schenck*, 318 Or 402, 407, 870 P2d 185 (1994) (observing that "the rules of judicial conduct are fashioned, in part, for the purpose of

maintaining public confidence in the legal system, by imposing a system of ethical restraints that will further both the fact and the appearance of a system committed to providing equal justice under law"); *see also In re Harris*, 334 Or 353, 360, 49 P3d 778 (2002) (observing that the purpose of lawyer disciplinary proceedings "overlaps, but is not coextensive with, the principles underlying the criminal law"). While broader ethical standards may require recusal when impartiality may reasonably be questioned, current constitutional standards, as we will explain, invalidate a warrant only when there is, in fact, actual bias. *Compare* Oregon Code of Judicial Conduct, JR 2-106 *with State v. Burnam*, 66 Or App 132, 137, 672 P2d 1366 (1983) (affirming order to suppress evidence from warrants issued by magistrate with personal involvement).

There is, as yet, no authority that would hold that a standard for recusal provides a defendant a right under Oregon's constitution to question whether a judge was "impartial and detached" when issuing a search warrant. *See State v. Hale*, 252 Or App 187, 204; 204 n 9, 288 P3d 1 (2012), *rev den*, 353 Or 533 (2013) (declining to reach question). Defendant's only arguments to broaden Oregon's constitutional standard beyond that of the federal constitution are the recusal standards, and those standards do not reach this situation. If there is to be a case in which ethical standards aid the constitutional inquiry, then it must be another case. In this case, constitutional standards alone govern the question. Absent a better reason to read them differently, the two constitutions' provisions on impartiality are the same. There may be occasions when Article I, section 9, of the Oregon Constitution extends its protections when the Fourth Amendment does not. *See State v. Nagel*, 320 Or 24, 34, 880 P2d 451 (1994) (employing different standards under the Fourth Amendment and Article I, section 9); *see also State v. Backstrand*, 354 Or 392, 427, 313 P3d 1084 (2013) (Brewer, J., concurring) (federal and state provisions serve a different purpose). These facts do not present such an occasion.

Insofar as defendant relies on the Fourth Amendment, federal law provides defendant an unfavorable answer. We reviewed that law in *Hale*, 252 Or App at 199-203. In

that case, the defendant moved to suppress evidence, contending that an order for a body-wire was not signed by a "neutral and detached magistrate." The judge who had signed the order had once served as a senior deputy district attorney, had been called to the scene of the murder, had been available to advise officers, and had attended the victim's autopsy. The case had gone cold. Four years later, when an application for the order for a body-wire was presented to the same person, now a judge, he recognized the victim's name but regarded the application as like hundreds of others. The defendant insisted that the judge was not "neutral and detached" due to his involvement at the murder scene and his past supervision of the investigation of gang-related crimes.

We observed that the requirement of a "neutral and detached" magistrate, under the Fourth Amendment, is illustrated in two, if not three lines of cases. *Id.* at 198 (citing *U.S. v. Bowers*, 828 F2d 1169, 1174 (6th Cir 1987), *cert den*, 486 US 1006 (1988) (positing lines of cases)). In one sort of case, the Fourth Amendment is violated by personal engagement in the investigation or prosecution. That happens, for example, when a state attorney general issues a search warrant, acting as a justice of the peace, then goes on to personally investigate and prosecute the case. *Coolidge*, 403 US at 450; *see also Lo-Ji Sales, Inc. v. New York*, 442 US 319, 326-27, 99 S Ct 2319, 60 L Ed 2d 920 (1979) (town justice assists officers at the crime scene with an open-ended warrant). In another sort of case, the Fourth Amendment is violated by personal financial interest in the outcome. That happens, for example, when a justice of the peace is paid a fee for warrants issued but not for warrants refused. *Connally v. Georgia*, 429 US 245, 250, 97 S Ct 546, 50 L Ed 2d 444 (1977). Due process principles of the Fourteenth Amendment are implicated, too. *Id.*

We recognized that there are problems other than just direct involvement in an investigation or having a conflict due to a financial interest. In what might be a third sort of case, we acknowledged that there "are circumstances 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Hale*, 252 Or App at 202 (quoting

*Caperton v. A. T. Massey Coal Co., Inc.*, 556 US 868, 872, 129 S Ct 2252, 173 L Ed 2d 1208 (2009) (internal quotation marks and citation omitted)). A constitutional violation, for example, could result from actual bias or from the judge's prior relationship with the defendant. In such a case, the inquiry "is an objective one." *Id.* The court must ask "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Hale*, 252 Or App at 203 (quoting *Caperton*, 556 US at 883-84) (internal quotation marks and citation omitted).

In *Hale*, our focus turned to this sort of case involving "actual bias." We considered the matter as a constitutional question, not as an ethical question.[7] We observed:

> "[T]he question is not whether the trial court should have avoided any appearance of bias or even whether the Oregon Code of Judicial Conduct would have required Judge Bergstrom to recuse himself. Rather the question is whether, 'under a realistic appraisal of psychological tendencies and human weaknesses,' the average judge in Judge Bergstrom's position, *i.e.*, a judge with his level of involvement as a previously assigned district attorney on the murder investigation, 'is likely to be neutral, or whether there is an unconstitutional potential for bias.'"

*Id.* at 204. Applying that standard, we concluded that the judge's prior involvement did not preclude him from issuing the order. He had nothing at stake personally or professionally in the outcome of the prosecution, and he had nothing more than a passing familiarity with some of the names and possible motives involved. We held that the warrant was valid, sustained admission of the evidence, and affirmed the conviction.[8]

Although *Hale* may be recent, it is not the only Oregon case to look for "actual bias." In *Burnam*, 66 Or App

---

[7] We cautioned that the judicial code was not before us and that we did not intend to express any opinion on it. 252 Or App at 204 n 9.

[8] In support of that conclusion, we cited a federal case holding that a judge remained "neutral and detached" notwithstanding that he had represented the defendant in two felony cases six years before. 252 Or App at 206 (citing *Harris*, 566 F3d at 433).

at 132, we affirmed an order suppressing evidence derived from challenged search warrants. The warrants had been issued by a justice of the peace who had previously called the police and who had implored police to protect his clerk from the defendant. Unlike the pattern cases, the justice of the peace did not direct an investigation, nor did he have a financial interest, but he was not neutral and detached. A demonstrable personal interest existed in *Burnam*. A personal bias did not exist in *Hale*.

In this case, the judge who issued these warrants had not acted to direct the investigation. He had no financial interest in the warrants or stake in the outcome in the proceeding. Considering "a realistic appraisal of psychological tendencies and human weaknesses," the circumstances did not show actual bias in the matter. *See Hale*, 252 Or at 203. The judge recalled little about defendant, and he did not rely on personal knowledge to supply information where an affidavit might have been lacking. Instead, the judge found probable cause to search within the information offered in the supporting affidavit. When issuing these warrants, Judge Butterfield was indeed "neutral and detached." The warrants were valid. The order to suppress the evidence was properly denied.

Affirmed.