**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**KENNETH LAWRENCE HERSHEY,**
*Defendant-Appellant.*

Harney County Circuit Court
1310372CR; A157388

401 P3d 256

Sarah Laidlaw, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before DeVore, Presiding Judge, and Garrett, Judge, and Duncan, Judge pro tempore.*

------------

* Garrett, J., *vice* Flynn, J. pro tempore.

**DUNCAN, J. pro tempore**

In this criminal case, defendant appeals the judgment convicting him of first-degree animal neglect, ORS 167.330.[1] Defendant moved to suppress evidence gathered as a result of law enforcement officers' warrantless entry onto his property, arguing that the entry violated his rights under Article I, section 9, of the Oregon Constitution.[2] The trial court denied that motion, concluding that the search was justified under the emergency aid exception to the warrant requirement as we had recently interpreted that exception. *See State v. Fessenden*, 258 Or App 639, 649, 310 P3d 1163 (2013), *aff'd on other grounds sub nom State v. Fessenden/ Dicke*, 355 Or 759, 333 P3d 278 (2014). Defendant assigns error to that ruling. Addressing the narrow question properly before us, we conclude that, under the totality of the circumstances, there were specific and articulable facts from which the officers could, and did, reasonably conclude that the entry was necessary in order to provide emergency aid to defendant's cattle. We therefore affirm.

We review a trial court's denial of a defendant's motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). We are bound by the trial court's explicit and implicit findings of fact if there is constitutionally sufficient evidence in the record to support them. *Id.* at 75. We state the facts consistently with that standard.

At the time of the hearing on defendant's motion to suppress, Sheriff Glerup was the Sheriff of Harney County. At the time of the hearing on defendant's motion to suppress, Glerup had more than 31 years' experience in law enforcement and had investigated "several" animal abuse and neglect cases in the county. Sergeant Needham was a

---

[1] ORS 167.330(1) provides, as relevant here:

"A person commits the crime of animal neglect in the first degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence:

"(a) Fails to provide minimum care for an animal in the person's custody or control and the failure to provide care results in serious physical injury or death to the animal[.]"

[2] Article I, section 9, of the Oregon Constitution provides in part, "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

deputy sheriff in Harney County, who, at the time of the motion hearing, had conducted approximately 10 major animal abuse and neglect investigations.

On July 8, 2013, Needham went to defendant's property in Burns, Oregon, in response to a call from Noelle Hauck, who lived on a nearby ranch and had reported "that [defendant's] cows were starving, and/or had no water or food." Needham drove to the property, but was unable to see the cattle. There is a hill with a lip, which can conceal the cattle from view from the highway.

Needham called defendant, who was at the coast, and explained that the sheriff's office had received a report about the condition of defendant's cattle. Defendant told Needham that the cattle "were okay," and that he had fired the workers who had been taking care of them approximately a week earlier but had arranged for a man named Brandon Baron to take care of the cattle.

Needham took no further action that day. Glerup called Noelle Hauck and relayed the information Needham had received from defendant.

The next day, Noelle Hauck's husband, Scott Hauck, "a long-term rancher * * * who's run cattle for most of his life," whose ranch is "not far from" defendant's property, and who was "very familiar with" cattle, called the sheriff's office and spoke to Glerup. Scott Hauck told Glerup that, "in his opinion[,] the animals were near death."

As Needham later summarized at the motion hearing, the Haucks had reported that "the cows were thin, that they appeared to be starving, no food, and that they were trying to get out of the property to obtain food and/or water." The animals appeared "to be dying" and "near death." According to Needham, the Haucks' reports were based on their personal observations of the cattle from the highway.[3]

In addition, Needham spoke with the persons who lived directly to the west of the gate to defendant's property. They said that they had thrown "a small amount of hay over

---

[3] Needham said that there were a total of three "complaints" received by the sheriff's office about defendant's cattle, but he was aware of only two "at the time."

the fence because the cows looked like they were starving," and that "the cows had been coming down the road, to the gate area, trying to get out."

According to Glerup, after Scott Hauck's call, "[t]hat's when * * * Sergeant Needham contacted Brandon Baron by phone, and we learned that what we had been told by [defendant] was not true, that [Baron] was not hired to take care of" the cattle. Baron told Needham that defendant had contacted him a few days earlier because he had gotten a call that the cattle were out on the highway. Baron said that defendant asked him to check, and to put them back onto his property if they were out. Baron told Needham that he agreed to check for the cattle on the highway—he did not find them there—but that he had never been hired to take care of the cattle.

After Needham spoke with Baron, he briefed Glerup, and Glerup decided that they would to go out to the property. At the motion hearing, Needham testified that he and Glerup "were concerned about the health and safety of the cattle, that they were possibly dying on the property, and we knew that [defendant] was out of town, and that there was no apparent person taking care of the cattle." When asked if he believed that the entry onto defendant's property "was necessary to render immediate aid or assistance to the cows," and whether it was his "belief that they needed immediate aid or assistance, and without that immediate aid or assistance they would suffer serious physical injury or death," Needham answered, "Absolutely."

Also at the motion hearing, Glerup described the information he had when he decided that they had to enter defendant's property immediately: "We had two local people that were very familiar with cows and cattle, and they were telling us that they were in very poor health, and they—they feared for their safety and their lives." When asked if he felt that it was necessary to enter the property to render immediate aid or assistance to the cows, he said, "Yes," and that in his view it was their "duty" to ensure the safety of the cattle.

Glerup and Needham entered defendant's property, where they made observations and gathered evidence of

animal neglect. Defendant was ultimately charged with five counts of first-degree animal neglect, ORS 167.330, and one count of second-degree animal neglect, ORS 167.325.

Defendant moved to suppress the evidence gathered as a result of the officers' entry onto his property.[4] In response, the only justification that the state advanced for the warrantless entry was the emergency aid doctrine. The parties both filed memoranda recognizing that a Court of Appeals' decision, *Fessenden*, had recently held that that doctrine could apply to nonhuman animals. 258 Or App at 649. The parties also agreed on the legal analysis for determining whether the requirements of the emergency aid doctrine had been satisfied. The dispute before the trial court at the suppression hearing was whether the state had met its burden of proving that those requirements had been satisfied. At the conclusion of the hearing, the trial court made findings, concluded that the emergency aid doctrine applied, and denied the motion to suppress.

Pursuant to negotiations, defendant agreed to a stipulated facts trial on one count of first-degree animal neglect, with the understanding that he would be able to appeal the denial of his motion to suppress, and the state agreed to dismiss the remaining counts. *See State v. Pierce*, 263 Or App 515, 518-19, 333 P3d 1069 (2014) (holding that similar agreement allowed the defendant to appeal the denial of his motion to suppress).

On appeal, defendant argues that the trial court erroneously denied his motion to suppress because the state failed to establish that the warrantless entry onto his property was justified under an exception to the warrant requirement. He argues that the state failed to meet its burden of establishing the requirements for emergency aid,

_____

[4] The record does not reveal whether any part of the land that the officers entered was curtilage, but there was no dispute at the suppression hearing that defendant had a protected privacy interest in the property. The record does indicate that the officers entered through a locked gate. *See State v. McKee*, 272 Or App 372, 377, 356 P3d 651 (2015) (Under Article I, section 9, "a person has a protected privacy interest in property outside the curtilage of a residence if the person manifests an intention to exclude the public from the property[,]" by fencing it, posting it, or otherwise closing it off.).

and he argues that, in any event, contrary to our decision in *Fessenden*, that doctrine does not extend to animals.

In arguing that the trial court erred by denying his motion to suppress based on the emergency aid exception, defendant begins by arguing that *Fessenden* was wrongly decided. Specifically, he argues that "the emergency aid exception should not extend to animals." But, defendant did not preserve that argument. The parties and the trial court all agreed at the motion hearing that the emergency aid exception, after *Fessenden*, extended to animals, and defendant did not make any argument to the contrary. As noted, defendant's argument before the trial court was that the state had failed to satisfy the requirements of the exception. That did not preserve an argument that the case he had acknowledged as providing the relevant analysis was wrongly decided. *See State v. Lockridge*, 282 Or App 414, 419, 386 P3d 96 (2016) (argument not preserved when "neither the state nor the trial court had any reason to believe that [the] defendant was" making that argument, "the state had no opportunity" to respond to it, "and the trial court had no reason to rule on that issue"); *see also State v. Reyes-Camarena*, 330 Or 431, 440, 7 P3d 522 (2000) (holding that the appellant failed to preserve a claim of error that was based on an argument that precedent was wrongly decided, where in the trial court, the appellant had conceded that the precedent was controlling).[5]

Defendant also renews on appeal his argument that the state had failed to satisfy the requirements of the

---

[5] In *Fessenden*, we held that the emergency aid exception to the warrant requirement applies to animals. On review, the Supreme Court affirmed on an alternative basis that the trial court had also ruled on. It held that the warrantless actions at issue in the case were justified under the exigent circumstances exception, and expressly declined to address "whether the emergency aid exception applies to animals," because it was unnecessary to resolve that question under the circumstances. Here, the state did not advance below any other justification for the warrantless action, nor would one of the alternate grounds discussed by the parties on appeal—exigent circumstances or consent—satisfy the requirements for affirming on an alternate ground. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 658-60, 20 P3d 180 (2001) (A reviewing court may affirm on an alternative basis if (1) the evidentiary record is sufficient to support it, (2) the trial court's ruling is consistent with the view of the evidence under the alternative basis, and (3) the record is materially the same one that would have been developed had the prevailing party raised the alternative basis below.). *Fessenden/Dicke*, 355 Or at 775.

emergency aid exception. That more narrow argument is properly before us, and we now turn to it.

Article I, section 9, prohibits unreasonable searches and seizures. Under Article I, section 9, warrantless searches and seizures are *per se* unreasonable, unless they fall within an established exception to the warrant requirement. *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011).

Generally, an officer must have a warrant to enter or search a person's premises. *State v. Weaver*, 214 Or App 633, 637, 168 P3d 273 (2007) (citing *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988)). However, an officer may enter or search a person's premises without a warrant if the requirements of the emergency aid exception to the warrant requirement are satisfied. *Baker*, 350 Or at 649-50. The Supreme Court set out those requirements in *Baker*:

> "[A]n emergency aid exception to the Article I, section 9 warrant requirement is justified when police officers have an objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons, or to assist persons who have suffered, or who are imminently threatened with suffering, serious physical injury or harm."

350 Or at 649 (footnotes omitted). To establish that the requirements of the emergency aid exception are satisfied, the state must prove that, at the time of the warrantless entry, the officers had the subjective belief "that there was an immediate need to aid or assist a person who has suffered (or is imminently threatened with suffering) serious physical injury or harm" and that that "belief [was] objectively reasonable." *State v. McCullough*, 264 Or App 496, 502-03, 336 P3d 6 (2014). The emergency aid exception does not require probable cause to believe that a crime has been or is being committed. *Fessenden/Dicke*, 355 Or at 765. "It permits warrantless entry, search, or seizure, regardless of whether the officer has probable cause to believe that a crime has been or is being committed, as long as the officer reasonably believes it necessary to "'render immediate aid to persons *** who have suffered, or who are imminently threatened with suffering, serious physical injury or harm.'" *Id.* (quoting *Baker*, 350 Or at 649 (omission in *Fessenden/Dicke*)).

In *Fessenden*, this court held that the emergency aid exception can justify warrantless searches and seizures to protect animals "when law enforcement officers have an objectively reasonable belief, based on articulable facts, that the search or seizure is necessary to render immediate aid or assistance to animals that have suffered, or which are imminently threatened with suffering, serious physical injury or cruel death, unless that injury or death is being inflicted lawfully." 258 Or App at 646. We further held that the emergency aid exception justified the warrantless search and seizure at issue in *Fessenden*, which was of a horse that, as observed by an animal control officer, was "near death from starvation, * * * in imminent danger of suffering organ damage (either directly from starvation or as the result of falling), and * * * [in need of] emergency medical care." *Id.* at 649-50. We explained:

> "Given the possibility of imminent death, as well as the unnecessary suffering associated with starvation and organ failure * * *, [the animal control officer] * * * could reasonably conclude that he should take immediate steps to save the horse, or at least alleviate its suffering[.]"

*Id.* at 650.

As in *Fessenden*, we conclude that the emergency aid exception justifies the warrantless entry at issue here. At the time of the warrantless entry, the officers knew that, in July, in Burns, Oregon, defendant was away from his property and his cattle had not been cared for in at least a week. They also knew that neighbors had observed that the cattle lacked food and water and were starving and trying to escape the property. According to the neighbors, the cattle appeared to be "dying" and "near death."

Based on those facts, Glerup and Needham subjectively believed that it was necessary to enter defendant's property to render immediate aid or assistance. As Needham testified, he believed that the cattle "needed immediate aid or assistance, and without that immediate aid or assistance they would suffer serious physical injury or death." That belief was objectively reasonable; the circumstances known to the officers at the time of their entry onto the property

were sufficient to support an objectively reasonable belief that the cattle were presently dying from starvation and dehydration and were near death. As in *Fessenden*, we conclude that, "[g]iven the possibility of imminent death, as well as the unnecessary suffering associated with starvation," the officers could reasonably conclude that they "should take immediate steps to save" the cattle, or to alleviate their suffering. 258 Or App at 650.

Defendant argues that the articulated facts do not show that there was a true emergency. He argues that the fact that the officers waited a day before entering the property shows that they did not believe that a true emergency existed. But the officers explained how the information that they had changed over time, and how their concerns escalated. When Needham first called defendant, after the sheriff's office had received Noelle Hauck's report, defendant reassured Needham that the cattle were "okay," and that, although he had fired his previous workers approximately a week before, he had hired Baron to take care of the cattle. The next day, after Scott Hauck called and reported that the cattle were "near death," Needham contacted Baron, and determined that what defendant had told them about Baron taking care of the cattle "wasn't true." At that point, it was reasonable for the officers to believe that no one had been taking care of the cattle for approximately a week, and given the information that the known callers were reporting, it was reasonable for them to believe that the cattle lacked food and water and appeared to be "dying" and "near death." Under the totality of the circumstances, it was also reasonable to conclude that it was necessary to render immediate aid or assistance to the cattle, and that, without that immediate aid or assistance they would suffer serious physical injury or death.

Defendant also argues that the officers could have taken the time to call defendant back, or should have sought a search warrant. But, as we have concluded, it was reasonable to believe that the cattle needed *immediate* aid at the time the officers entered defendant's property, and the officers did act immediately after learning that the cattle had not had anyone taking care of them for a week.

In sum, the officers' belief that immediate action was necessary to provide aid to the cattle, which appeared to be "dying" and "near death," was reasonable under the circumstances. Accordingly, the trial court did not err when it denied defendant's motion to suppress.

Affirmed.